IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANNIE BENNETT FITCH, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-24-00938 |
| THE ST. PAUL'S SCHOOL FOR GIRLS, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Plaintiff Annie Bennett Fitch ("Plaintiff") filed an Amended Complaint against Defendants The St. Paul's School for Girls ("SPSG"), Christina Ferrens, Ereni Malfa, Sabrina Murray, Katherine Grace Porter, Sara Porter, and Bra'el Taylor for claims arising out of Plaintiff's time as a student at SPSG before her graduation more than three years ago. ECF 17. Five motions are currently pending and ripe for disposition: (1) a motion to dismiss filed by Defendants Ferrens, Malfa, Murray, and SPSG (collectively, "the SPSG Defendants"), ECF 32; (2) a motion to dismiss filed by Defendants Katherine and Sara Porter (collectively "the Porter Defendants"), ECF 34; (3) a motion to disqualify counsel filed by Defendant Taylor, ECF 36; (4) a motion to dismiss for lack of jurisdiction filed by Defendant Taylor, ECF 37; and (5) a motion to dismiss filed by Defendant Taylor, ECF 35. This Court has reviewed those motions and the oppositions and replies that have been filed. ECF 42, 43, 44, 45, 48. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the SPSG Defendants' motion to dismiss, ECF 32, will be granted as to Plaintiff's four federal claims. This Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will decline to

adjudicate the motion to recuse counsel, ECF 36, which is best presented in the court where the case may proceed to discovery and trial.

I. FACTUAL BACKGROUND

The following facts are derived from the Amended Complaint, ECF 17, and are assumed to be true for purposes of this motion. SPSG is a private day school for girls. *Id.* ¶ 2. On or about April 4, 2020 through September, 2021, SPSG was the recipient of a loan under the Paycheck Protection Program from the Small Business Administration, which required the school to comply with federal civil rights laws. *Id.* ¶ 38. Plaintiff attended SPSG as a high school student from 2017-2021. *Id.* ¶ 12. Because Plaintiff had a learning disability and an anxiety disorder, SPSG and Plaintiff entered into an Individualized Education Plan ("IEP") addressing accommodations for her learning differences. *Id.* ¶ 14. During Plaintiff's tenure at the school, Plaintiff's mother, Jamie Bennett, was dissatisfied with the responses she received from Defendant Christina Ferrens, the head of SPSG's upper school, relating to Plaintiff's IEP. *Id.* ¶ 46. In particular, in February, 2020, Bennett requested accommodations for Plaintiff's disability to allow her to participate in Advance Placement ("AP") English courses. *Id.* ¶¶ 48, 49. Plaintiff's English teacher, Whitney Schultz, asked Ferrens how to respond, and Ferrens instructed Schulz to ignore the request because Bennett was "crazy" and made "a federal case out of everything." *Id.* ¶ 50.

SPSG's Student-Parent Handbook states that "physical or emotional injury to others . . . will not be tolerated" and provides that the school "is committed to providing an atmosphere free of harassment or intimidation." *Id.* ¶¶ 18, 19. All SPSG students and their parents sign an Acceptable Use Policy agreement annually providing that "on and off campus online behavior used to harass any individual included but not limited to bullying, intimidation and discrimination should be reported immediately to a faculty member, and will lead to disciplinary

2

action and possible criminal prosecution." *Id.* ¶ 21, 24. The SPSG Faculty Handbook also requires that "[e]mployees who learn or suspect that a student is being harassed, bullied or hazed to [should] report such information to the Heads of School or an administrator *as soon as possible.*" *Id.* ¶ 34 (emphasis in original).

In the fall of 2019, the beginning of Plaintiff's junior year, she had a falling out with Defendant Katherine Porter, who was the "leader" of their group of friends. *Id.* ¶¶ 58, 59. Porter, Defendant Bra'el Taylor, and other students began to harass and bully Plaintiff, including "ignoring behaviors, malicious teasing and putdowns, social exclusion and manipulating friendships." *Id.* ¶ 60. From September 2019 through June 2021, the group of students sent bullying text messages about Plaintiff in a group chat, including during school hours. *Id.* ¶ 68. In mid-January, 2020, the group of students "banished" Plaintiff from their friend group but continued to exchange angry text messages about Plaintiff and posted bullying images online relating to Plaintiff. *Id.* ¶¶ 70, 71.

On January 27, 2020 (shortly before her exchange with Plaintiff's English teacher about the AP course), Bennett met with SPSG regarding the bullying of her daughter. *Id.* ¶ 72. Ferrens and Defendant Sabrina Murray, the Dean of Students, attended the meeting. *Id.* ¶ 73. At the meeting, Ferrens appeared to suggest that bullying was common when a girl "breaks friendship rules." *Id.* ¶¶ 75, 77. The school officials did not offer solutions to Plaintiff's problem. *Id.* ¶ 78.

Shortly after Bennett engaged in the exchange with Schultz about the AP English class, on February 21, 2020, Plaintiff's parents again met with SPSG to discuss the ongoing bullying of Plaintiff. *Id.* ¶ 79. From January 17 through March of 2020, Bennett also reached out to Katherine Porter's mother, Defendant Sara Porter, to inform her about the bullying. *Id.* ¶ 82. Sara Porter is a teacher at SPSG. *Id.* ¶ 42. Although Sara Porter initially apologized to Bennett and

agreed to have Katherine Porter apologize, self-report her conduct to the school, and receive counseling, those agreements went unfulfilled. *Id.* ¶ 83. Moreover, while Sara Porter had the alleged bullying text messages in her possession in January or February, 2020, she did not disclose them to school administrators or law enforcement. *Id.* ¶¶ 85-86. She also did not disclose them to Plaintiff's parents. *Id.* ¶ 87.

On or about February 28, 2020, Sara Porter met with several school administrators including Ferrens, Murray, and Laurie Mays, the school counselor. *Id.* ¶ 90. They continued to engage in follow-up communications about what would occur if Katherine Porter admitted to the school that she had bullied Plaintiff. *Id.* ¶ 93. "Upon information and belief," Ferrens instructed Sara Porter not to share the inculpatory text messages with the school, so that the school would not have to report them to Plaintiff's parents or report the group of students to the authorities for violating Maryland Law.[1] *Id.* ¶¶ 97-100.

In March, 2020, Plaintiff's parents filed formal complaints against the Student Defendants with the school. *Id.* ¶ 101. However, SPSG failed to conduct any investigation into the bullying allegations. *Id.* ¶¶ 104-05. Although the COVID-19 pandemic shifted the school to remote learning around that same time, members of SPSG staff met with the Porter Defendants and another accused student and her mother after Plaintiff's parents' complaints. *Id.* ¶¶ 107-09. On or about May 3 or 4, 2020, SPSG administrators had remote meetings with the accused students and their parents to inform them that the school had decided not to pursue the bullying complaints. *Id.* ¶ 111. Plaintiff alleges that the refusal to investigate the bullying allegations

---

[1] As alleged in the Amended Complaint, Maryland's Misuse of Interactive Computer Service law, or "Grace's Law," permits criminal prosecution for a misdemeanor offense. *Id.* ¶¶ 24, 29. The Amended Complaint further alleges that SPSG would have been required to report the students to the authorities. *Id.* ¶ 98.

stemmed from Ferrens's anger that Plaintiff's parents had advocated for disability accommodations in February, 2020. *Id.* ¶ 115.

On May 7, 2020, SPSG informed Plaintiff's parents that the harassment and bullying were simply the product of "social dynamics" and that the school would take no action. *Id.* ¶ 121. The email represented that the school had "gone through the disciplinary process" with the accused students. *Id.* ¶ 123. Murray has since admitted that SPSG did not agree that the accused students' conduct constituted bullying, although she admitted that it would cause emotional injury to Plaintiff. *Id.* ¶¶ 124-25.

On September 1, 2020, the mother of one of the accused students emailed Defendant Ereni Malfa, the Head of SPSG, along with Murray and Ferrens, asking the school to confirm that "you stated in conversation you agree the [bullying] claims are false as well." *Id.* ¶ 117. Malfa responded by saying, "I think it is important that we touch base today," and arranging a telephonic discussion. *Id.* ¶¶ 118-19.

Plaintiff missed more than 20 days of school as a result of the bullying and struggled to maintain her GPA and to participate in leadership opportunities. *Id.* ¶ 130. She also suffered from anxiety including suicidal ideation. *Id.* ¶ 131.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

### B. ANALYSIS

Along with a variety of state law causes of action against the various defendants, Plaintiff's Amended Complaint presents four federal claims against SPSG: Counts One and Two allege discrimination and retaliation pursuant to the Americans with Disabilities Act ("ADA") and Counts Three and Four allege discrimination and retaliation pursuant to Section 504 of the Rehabilitation Act. ECF 17. Each of those federal claims is subject to dismissal.

#### 1. COUNTS 1 & 2 – ADA CLAIMS

First, Plaintiff's ADA claims arise under Title III, which provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Title III of the ADA permits a citizen to bring "a civil action for preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order." 42 U.S.C. § 2000a-3(a). In other words, Title III "provides a

private right of action for injunctive relief but no right of action for monetary relief." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016) (citing 42 U.S.C. § 12188). The limitation to injunctive relief, not damages, applies to both ADA discrimination claims and ADA retaliation claims. *See* 42 U.S.C. § 12203(c); *Israelitt v. Enter. Servs., LLC*, No. 18-01454-SAG, 2022 WL 80486 at *3 (D. Md. Jan. 7, 2022), *aff'd* 78 F.4th 647 (4th Cir. 2023) (holding that "neither compensatory nor punitive damages are available under the ADA's antiretaliation provisions"). "Injunctive relief, however, 'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Thomas*, 841 F.3d at 638 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Here, Plaintiff graduated from SPSG in 2021. ECF 17 ¶ 12. She has not alleged any real or immediate threat that she will be wronged again or will suffer any irreparable injury in the absence of an injunction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (requiring, for constitutional standing, a plaintiff to show a "real and immediate threat that the plaintiff will be wronged again"). Accordingly, Plaintiff lacks standing to bring an ADA discrimination or retaliation claim, and Counts One and Two must be dismissed.

### 2.   COUNTS 3 & 4 – REHABILITATON ACT

In contrast to the ADA, the Rehabilitation Act permits recovery of monetary damages where there is a finding of intentional discrimination. *See, e.g.*, *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 832 (4th Cir. 1994) (concluding "that Congress has not overturned the presumption towards the full panoply of damages in the case of § 504"); *Id. at* n.9 ("We [ ] hold that requiring a finding of 'intentional discrimination' to make out a violation of § 504 that supports a damages remedy places this case within the group of cases generally referred to as

'disparate treatment' cases."). In the context of a student excluded from an educational program, a plaintiff must establish that (1) she has a disability, (2) she is otherwise qualified to participate in the defendant's program, and (3) she was excluded from the program on the basis of her disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (applying the Rehabilitation Act and Title II of the ADA); *see also Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (applying the Rehabilitation Act and Title III of the ADA). To succeed on a claim under the Rehabilitation Act, a plaintiff must establish she was excluded "solely by reason of" her disability, although the ADA (which is inapplicable here) requires only that the disability was "a motivating cause" of the exclusion. *Halpern v. Wake Forest Univ. Health Sci*, 669 F.3d 452, 461-462 (4th Cir. 2012); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999).

Here, Plaintiff does not allege, nor does she even argue, that SPSG failed to investigate her bullying allegations *solely* because she has a learning disability or anxiety. Instead, both in her Amended Complaint and in her opposition to the motion to dismiss, she contends that SPSG failed to investigate her parents' bullying allegations in retaliation for her parents' assertions of her right to disability accommodations in the AP English courses. *See* ECF 17 ¶115 ("In fact, the real reason SPSG refused to investigate the Plaintiff's parents' bullying complaints was because Ms. Ferrens, the head of SPSG Upper School [sic] was angry that Plaintiff's parents had advocated for her to receive accommodations for her disability and wanted to punish Plaintiff for her parents' 'demands.'"); ECF 43 at 18 ("Ferrens wanted to ensure that no investigation would occur, and that no punishment would result because she was angry that the Plaintiff's parents had made 'demands' for accommodations of Plaintiff's disability."); *Id.* ("Ferrens' discriminatory intent was manifested in an internal email Ferrens sent to Sabrina Murray instructing her to send

8

an email to Plaintiff's parents that not only rejected the bullying complaints but would discourage the Plaintiff's parents from making future complaints to the School."). In other words, the factual allegations in the Amended Complaint set forth a plausible claim that Ferrens acted with retaliatory intent but do not set forth a plausible claim that SPSG declined to investigate the bullying allegations solely by reason of Plaintiff's alleged disability. Count Three, therefore, is subject to dismissal without prejudice.

Plaintiff's Rehabilitation Act retaliation claim in Count Four, though, is also subject to dismissal on separate grounds. The Rehabilitation Act provides, in relevant part, that no program or activity receiving federal funding shall exclude an otherwise qualified individual with a disability from participations in its program or from the benefits thereof. *See* 29 U.S.C. § 794(a). The ADA and Rehabilitation Act are "generally are construed to impose the same requirements," *Baird*, 192 F.3d at 468, meaning that the same elements govern retaliation claims under both statutes. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 271-72 (4th Cir. 2001). To state a claim for Rehabilitation Act retaliation, then, a plaintiff must establish "(1) that she has engaged in conduct protected by the [Rehabilitation Act]; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).

Making a request for a disability accommodation in an educational setting would be conduct protected by the Rehabilitation Act if the request were made to a program or activity receiving federal funding. *See* 29 U.S.C. § 794. The twist in this case is that Plaintiff's Amended Complaint has not plausibly alleged that her parents engaged in actions they believed in good faith to be protected by the Rehabilitation Act. The Amended Complaint alleges that the

9

discussions between Plaintiff's mother and the school regarding her daughter's disability (and the internal communications between school employees regarding the AP class issue) occurred between February 15, 2020 and February 20, 2020. ECF 17 ¶¶ 48-51. The Amended Complaint further specifically alleges that St. Paul's School received a PPP loan from the Small Business Administration, which required it to comply with the Rehabilitation Act and other federal civil rights laws, on April 4, 2020. *Id.* ¶ 38. The Amended Complaint, as drafted, therefore does not allege facts suggesting that Plaintiff's parents engaged in protected activity in February, 2020, *i.e.*, activity they believed in good faith to be protected by the Rehabilitation Act at the time it occurred.[2] Count Four, then, also is subject to dismissal without prejudice.[3]

### C. SUPPLEMENTAL JURISDICTION

The remaining counts (Counts Five through Ten) asserted in this case, including all counts against the defendants other than the SPSG Defendants, present state law claims. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case

---

[2] The SPSG Defendants attached an exhibit to their motion they assert speaks to the issue of whether Plaintiff's mother believed SPSG to be subject to federal discrimination statutes at the time of the exchange. ECF 33-2 at 3. This Court has not considered that exhibit in its analysis, as its inquiry at the motion to dismiss stage is limited to the four corners of the Amended Complaint and whether Plaintiff has alleged facts sufficient to state a claim.

[3] Because the Rehabilitation Act retaliation claim is subject to dismissal on this basis, this Court does not reach the number of other arguments made in favor of dismissing this claim, including but not limited to the adequacy of allegations of causation.

brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (footnote omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

After considering the *Carnegie-Mellon* factors, this Court will decline to exercise supplemental jurisdiction over the Plaintiffs' pendent state law claims. This litigation has just begun and the present opinion constitutes this Court's only interaction with the case. A Maryland state court will be better positioned to consider the merits of Plaintiff's claims under Maryland law and the common law, which constitute the bulk of this case and which this Court has not yet considered. Moreover, this case is better suited for disposition in Maryland courts, given the state's strong interest in adjudicating disputes under its own laws.

### III. CONCLUSION

For the reasons set forth above, the SPSG Defendants' Motion to Dismiss, ECF 32, is granted as to Plaintiff's four federal claims. This Court declines to exercise supplemental jurisdiction over the remaining state law claims, which may be refiled in state court, along with Defendant Taylor's motion to recuse counsel and any motions to dismiss relating to the state law claims. This federal case will be closed, subject to reopening should Plaintiff file a motion to amend her complaint to state a viable federal claim within thirty days.

Dated: December 11, 2024                                        /s/
                                                                                       Stephanie A. Gallagher
                                                                                       United States District Judge